Stephen Hodgdon, Administrator, etc., *vs.* Clanrick Crosby, Sen., *et al.*

This case rested upon the question of mental capacity of Crosby, Sen., to intelligently and understandingly execute the note and mortgage sued upon, and the farther question of imposition practiced upon Crosby in procuring the execution thereof.

Justice Wingard finds nothing in the evidence to support the charges of imposition, and farther finds that 'Crosby fully comprehended the terms of the mortgage sued upon; that he voluntarily executed it, and could not in honesty and fair dealing have done otherwise.

Chief Justice Lewis finds, that from the effects of paralysis and advancing age, Crosby had been for some time previous to the execution of the mortgage in controversy, slowly but continuously becoming feebler of body and mind, but that he fully comprehended the terms and provisions of the mortgage and voluntarily executed the same.

Justice Greene while not differing materially from the other justices in his view of the facts of the case, differed from them as follows in conclusions of law:

1.  He finds the mortgage, sought to be foreclosed, essentially different from the mortgage it was given to correct in its conditions.

2.  He finds the description of property in the last mortgage different from the first.

3.  He finds from the condition of Crosby as disclosed by the evidence, that the burden of proof, as to mental capacity shifted upon plaintiff, and that plaintiff had failed to show that Crosby executed the mortgage with a knowledge of its contents, and an intelligent assent thereto.

Appeal from Second Judicial District holding terms at Olympia.

*Allen Bros.* for appellee.

No one appearing for appellant.

Opinion by Wingard, Associate Justice.

This cause was brought at the December term, A. D. 1876,

to recover upon a promissory note, and to foreclose a mortgage, given to secure the payment of the same, executed by the defendant, Clanrick Crosby, Sr., to the appellant as administrator, and dated April 30th, 1874. The other defendants were made parties, as subsequent incumbrancers.

The complaint alleges certain errors and defects in former instruments, made by Crosby, Sr., to secure the debt in suit, and that the note and mortgage, in suit, were given to correct such errors and defects.

The defendant, Crosby, Sr., defends, on the grounds of mental incapacity, fraud and imposition, and want of consideration. The issues raised, by the answer of Crosby, Sr., were alone tried, the court below finding the allegations of the answer to be true, as to the want of legal capacity, and adjudging costs to the defendants. There is but little, if any controversy in this case, as to the principles of law which govern. The case turns upon the weight of the evidence going to prove the mental condition of Clanrick Crosby, Sr., on the 30th of April, 1874.

1. Had he, at that date, mental capacity to understand the particular transaction which he performed?

2. Was there any fraud or imposition practiced upon him, or a want of consideration for the new contract?

As to the latter inquiry, we see nothing in the evidence to support it; nor do we understand it to be claimed in this court that there was any fraud or imposition practiced upon Crosby, Sr., or that the consideration was not entirely adequate.

As to the first inquiry, we think the evidence, by a great preponderance, shows, that at the date aforesaid, he had a disposing mind; that he fully comprehended what he was doing; that he intended to do what he did, and that what he did was but an act of honesty, of justice and fair dealing.

The testimony shows that Clanrick Crosby, Sr., had been attacked several times with paralysis. He had such attacks in 1866 and 1867 and in 1873, and that he has never recovered from the effects of disease, but has been getting worse, both in body and mind.

It shows, that in 1874 and previously, he had been engaged in active business, merchandising, milling, etc., that in 1875, he left Puget Sound, alone, and went to San Francisco, Cal., on business and for his health; that he returned home, alone; that in December, 1873, he executed a deed to Charlotte Scott, which was witnessed by his son and partner, W. F. Crosby, and one of his near neighbors, Mr. S. G. Ward; that December 29th, 1873, he made a deed to John Scott, witnessed by the same witnesses; that in January, 1874, he made a deed to the O. and T. R. R. Co., which was witnessed by his son, Walter, and Hazard Stevens, and acknowledged before said Stevens; that in March, 1874, he made another deed to said R. R. Co., witnessed by his said son, W. F. Crosby, and the said Stevens, and acknowledged before the latter, as Notary Public; that on May 15th, 1874, he executed a mortgage, on the same property covered by the mortgage in suit, to Marshall Blinn, which was witnessed by B. F. Dennison, who is his counsel in this suit, and by F. Tarbell, Notary Public, and now territorial treasurer, and acknowledged the same before said Tarbell; that on May 5th, 1874, he sold out his interest in the partnership with his son, W. F. Crosby, to the said W. F. Crosby, which was evidenced by a written instrument, witnessed by Dennison and Tarbell, aforesaid, and acknowledged before said Tarbell; that on May 15th, 1874, he made a deed for the mill, covered by the mortgage in this suit, to his son, W. F. Crosby, which said deed was witnessed by Tarbell and Dennison, aforesaid, and acknowledged before said Tarbell; that on Sept. 6th, 1873, he was appointed guardian of five minor children, in an estate valued at six thousand dollars, and continued as said guardian, without apparent objection, until 1875 or 1876; that his wife died in 1871, and he was appointed her administrator, and so continued until 1876, said wife's estate valued at $8700; that in 1876 he filed a petition in the Probate court for distribution of said wife's estate; that in January, 1876, he made a deed to one Kuhn, witnessed by Alfred and Nathaniel Crosby, and acknowledged before the latter, a nephew, as Notary Public; that in March, 1876, he was sworn to a list of interrogatories, before his neighbor and friend, S. G.

Ward, Esq.; that in March, 1876, he made a deed to his son, Clanrick Crosby, Jr., which was witnessed by Alfred and Nathaniel Crosby, and acknowledged before the latter.    These, and other acts, he did shortly before, and subsequent to the date of the note and mortgage in suit, and several witnesses testify that they never heard his mental soundness questioned until this suit was begun.    The old note and mortgage, for which the ones in suit were substitued, were read over to him, the object of the new note and mortgage was explained to him, in the presence of his son, W. F. Crosby, and they were also read to him; he signed them in the presence of said son, who subscribed his name as a witness thereto, and the other subscribing witness was an attorney in this court.    We think judgment should be given in this action, for the principal sum and interest according to the terms of the note, and a foreclosure of the mortgage premises, and for the costs and disbursements of Stephen Hodgdon, administrator, etc., the plaintiff below.    Let this cause be remanded to the District court, and a decree entered accordingly.

CONCURRING opinion of LEWIS, Chief Justice.

In addition to what has here been said by my Associate Wingard, I wish it expressly understood, that from the whole case, as made, I am of opinion, that from the fall of 1873, the time of the attack of paralysis at Astoria, Clanrick Crosby's mind became, and was slightly impaired, though not then perceptibly so, and that from that time, he has been quite slowly, but continuously, becoming more feeble in body and mind. That in April, A. D., 1874, and for a long time thereafter, he was possessed of ordinary understanding, and fully competent in mind to transact ordinary business.    That at the time of the execution of the mortgage in controversy, he was fully competent in mind to comprehend the terms of said mortgage, and that he did understand the terms and provisions thereof, and intended to execute the same in manner and form, in which the same was so by him executed.

Wherefore, the above facts being shown by plaintiff, by a preponderance of the evidence, the question as to the *onus probandi* here is immaterial.

Dissenting opinion of Greene, Associate Justice:

I should have been pleased to concur with my associates in this cause. But I am unable to rid myself of convictions received in the court below, which have been revived and strengthened, rather than impaired, by the review of the evidence here.

The dissenting opinion, to which I am driven, is not, however, referrible to any considerable divergence of view in regard to the facts. Indeed, my impressions of these are very nearly identical with those of my brother judges. As to the weight to be given to the testimony of the various witnesses, as to the attitudes that they respectively occupy towards one another, and this suit, and as to the facts to be gathered from the whole case, except the ultimate fact, of the mental competency of Clanrick Crosby, senior, at the time, and under the circumstances of the execution of the second mortgage, we are, as I understand it, pretty much and perhaps entirely agreed.

But, in three points we differ as to the law.

1. As to whether there was, in the second mortgage, a material variance from the first, as regards the maturity of the principal sum upon a foreclosure and sale, being had for default in payment of matured interest.

2. As to whether the description of the mortgage property in the second mortgage should be held to be materially variant from that in the first. And,

3. As to whether the burden of proof of mental capacity shifted upon the plaintiff in this case.

We are all agreed that had the original note and mortgage been merely replaced by others substantially the same, or others to which the maker freely and intelligently assented, the new ones could not have been impeached, on the ground of the maker's mental incompetency. Unquestionably he intended to execute the first, and equity would not relieve against any equitable though perfectly unconscious correctness of the formal or inadvertent defects. But if the second mortgage were materially different from the proper substance of that it was meant to replace, then its maker should have given it an independent, free and intelligent assent, in order to make it his.

Now, first, it is clear to me that a mortgage, which does not by its conditions accelerate in any event the collection of the principal sum, is materially different from one that, in a certain event does; such, is the precise case of the two mortgages at bar.

2. It seems to me that a description like that in the first mortgage, namely, "The Lincoln Flour Mills," in the absence of any evidence to show its real or current import and content, is not to be presumed to include land that the evidence shows does not underlie it, and fails to show is in any way connected with its operation.

3. I think that the evidence, as a whole, discloses that Clanrick Crosby's mind, at the time of executing the second mortgage, was very considerably deteriorated and enfeebled. In this, I differ from my associates.

The question is, clearly, not whether the plaintiff or any one else intended to impose upon him, or was guilty in a moral sense, of so doing, but whether, in fact, he was the victim of imposition. I feel obliged to hold, that, as soon as the evidence discloses that his mind had become permanently reduced by age or disease, below that of fair and ordinary intelligence and power, then he becomes the ward of equity, and he who asserts his free and intelligent assent to any contract must prove it. In this case, the plaintiff had gone so far as to prove that the old gentleman, freely and understandingly, assented to the making of such a new instrument, as should remedy certain formal or inadvertent defects in the old. These defects were specifically and distinctly pointed out to him, and he recognized them, and agreed to their amendment. But, really the new mortgage was so drawn as to vary from the old, in other additional, and, as I think, substantial particulars, and in my opinion, the plaintiff needed to go farther, and show that these other particulars were distinctly and simply presented to Mr. Crosby, and recognized and agreed to by him.

The evidence fails just here. In no way do these particulars appear to have been brought to his attention, unless by the reading to him, one after the other, the old and new mortgages.

Ability, upon such a presentation, to follow, grasp, retain and compare the contents of both instruments, so as to note and approve the difference between the two, implies a strength and activity of understanding and memory, which, I am sure, the infirm listener did not possess. It was too much to lay upon one in his feeble condition, especially after a specific statement of defects, and a desire to correct them, had been made to him, and his mind had thus been presumably put at rest regarding the existence of any desire for further or other alterations.

The mortgagor's son was present, doubtless, at the execution of the mortgage. But he cannot, in this case, in the light of all the facts, be held to have been present as an advisor and protector of his father. He was there for his personal ends, seeking an extension of time upon the mill property. He was not in a position or mood to raise questions in his father's behalf, about the description of property or the maturity of the principal debt. His own interests imperatively demanded time, at whatever cost to others.

It may be said, the points wherein I contend for proof of the clear, and free, intelligent assent of the defendant, Crosby, are slight, and that it would make little difference, practically, upon the facts in this case, whether such a mortgage as was intended at first, or such an one as was finally executed, were given by him. It may be so. But the free, intelligent operation of the mind of a man, about even the least of things that are his own, is a very sacred right, and should be uniformly and sturdily upheld by the courts.